UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


MARINELLE K. VARELA

                                                      PLAINTIFF


v.                                         CIVIL ACTION NO. 3:02-CV-334-S


JOHN E. POTTER,
POSTMASTER GENERAL                                    DEFENDANT


## MEMORANDUM OPINION

This matter is before the court on the motion to dismiss or, in the alternative, for summary judgment by the defendant, John E. Potter, Postmaster General ("Postal Service"). This case involves the plaintiff's claims of employment discrimination under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000 (e), *et seq*., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, *et seq.*   For the reasons set forth below, the court will grant the defendant's motion for summary judgment on all claims.

### FACTS

The plaintiff, Marinelle K. Varela ("Varela"), was first employed by the Postal Service on June 13, 1983.  She was last employed as a distribution clerk at the Main Post Office in Louisville, Kentucky and has since retired.  Varela, an army veteran, sustained an injury to her left wrist while in the service.  She subsequently developed carpal tunnel syndrome in the same hand. She also suffers from a knee injury and various mental disorders.  Varela has filed this

1

lawsuit against the Postal Service alleging that it illegally discriminated against her, because of her disability, race, gender, and in retaliation for prior EEO activity, on several occasions from 1996-2002.  Her complaint contains nine counts, stemming from separate factual incidents.  The relevant facts will be fully discussed where appropriate below.

**STANDARD OF REVIEW**

The Postal Service has filed a motion to dismiss, or in the alternative, for summary judgment.  Because the court has relied upon evidence outside the pleadings in considering this motion, it will be treated as a motion for summary judgment.  *See* Fed. R. Civ. P. 12 (b).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Not every factual dispute between the parties prevents summary judgment.  *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party."  *Id.*  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy Street Corp.*, 822 F.2d at 1435.  In making these

2

determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

## DISCUSSION

### Count I

On August 29, 1996, Varela was involved in an incident with two other Postal Service employees, both of whom were African-American.  Varela, a Caucasian, alleges that the Postal Service discriminated against her based on her race and disability when it suspended her for fourteen days because of this altercation.  The situation began when one of these employees, Peggy Mills ("Mills"), began coughing near Varela. Varela, who feared contracting Mills' bronchitis and possibly passing it on to her terminally ill mother, asked if she could be stationed elsewhere on the floor.  After Varela moved, the second employee, Elisabeth Bomer, began taunting Varela by mimicking Mills' exaggerated coughing noises.

During this incident, Varela picked up a mail tray and swung it close to Bomer's face. Varela claims she was merely using the tray as a shield to protect herself from Bomer's germs. Varela's supervisor, Milt Tooma, also an African-American, issued a 14-day suspension for Varela, while Bomer received a non-disciplinary discussion.  An arbitrator reviewed Varela's suspension, finding it excessive and punitive in nature.  Therefore, the arbitrator reduced it to a 7-day paper suspension.

Varela now seeks relief under Title VII, which prohibits discrimination on the basis of race, and the Rehabilitation Act,[1] which prohibits discrimination against disabled persons. She

---

[1] Both the Rehabilitation Act and the Americans with Disabilities Act (ADA) prohibit discrimination against disabled persons.  Courts have held that the analysis under one "roughly parallels" the other.  *See Monette v. Electric Data Sys. Corp.,* 90 f.3d 1173, 1177 (6th Cir. 1996).

3

claims that she, the only Caucasian involved in the incident, was treated more severely than the other employees because of her race.  The record is completely devoid of any evidence that her race motivated Tooma to suspend her.   She does, however, state that Tooma indicated dissatisfaction with her medical restrictions associated with her carpal tunnel.  These statements were allegedly made prior to the incident resulting in her suspension; Tooma made no such statements in connection with the issuance of her suspension.

In the absence of direct evidence establishing race or disability discrimination, Varela relies upon the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, 67 L.Ed.2d 207 (1973).   Under this model, Varela must first show that she was (1) a member of a protected class; (2) subjected to an adverse employment action; (3) otherwise qualified; and (4) treated differently than similarly situated employees for the same or similar conduct. Then the burden of production shifts to the Postal Service to provide a legitimate, nondiscriminatory reason for its action.  *Id.* at 1825. The ultimate burden of persuasion rests with Varela to establish that the Postal Service's proffered reasons were merely pretext for discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089; *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

Section 504 of the Rehabilitation Act provides:

> [n]o otherwise qualified individual with a disability . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . ."

---

"Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997).  Therefore, this court will rely upon cases falling under the ADA as well as the Rehabilitation Act in the following discussion.

4

29 U.S.C. §794(a).  There is no dispute that the United States Postal Service, a federal agency, is a proper defendant.  Varela bears the burden of establishing the other three elements.  Her *prima facie* case consists of showing that she (1) is an individual with a disability, (2) is otherwise qualified to fulfill the requirements of her job, and (3) suffered an adverse employment action solely because of her disability.[2]  *See Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir. 1988). With regard to element (1) above, the Rehabilitation Act explicitly defines an "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such an impairment."  29 U.S.C. §705 (20)(B).

Varela identifies her disabilities as carpal tunnel syndrome, manic depressive disorder, personality disorder and stress disorder.[3]  *Plaintiff's Response* (DN 34), p. 18.  It appears that the Postal Service does not dispute that she suffers from these ailments.  However, determining whether a physical or mental impairment exists is only the first step in determining whether or not an individual is disabled.  Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. *See, e.g, Toyota Motor Mfg., Ky., Inc. v.*

---

[2]

  As mentioned earlier, in the absence of direct evidence, Varela can employ the burden-shifting framework of *McDonnell-Douglas.* In order to prove she is a member of a protected class, however, she must demonstrate that she is an individual with a disability.

  [3] However, in her complaint, Varela fails to mention any of these purported mental disabilities. In fact, she specifically identified her disability as a "carpal tunnel syndrome" throughout her complaint. *See Third Amended Complaint* (DN 11). Varela indicates in her own brief that the "Complaint was brought with the alleged basis of discrimination being race (Caucasian) and *physical* disability." *Plaintiff's Response* (DN 34), p. 6 (emphasis added). Furthermore, the evidence in the record is simply insufficient to establish that these mental ailments are disabling impairments within the meaning of the Rehabilitation Act.  Accordingly, we evaluate her disability claims based only on her carpal tunnel syndrome.

*Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002) ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.").

To qualify as disabling, the impairment must substantially limit one or more major life activities. As an initial matter, it is necessary to understand what is meant by the terms "major life activities" and "substantially limit." The EEOC regulations shed light on this: "'major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i). Furthermore, the term "'substantially limits' means . . . unable to perform a major life activity that the average person in the general population can perform . . ." 29 C.F.R. §1630.2(j)(1)(i). Varela fails to identify the major life activity in which she is limited because of her disability.[4]

Accordingly, she has not satisfied her initial burden. There is also insufficient evidence to support that she had a record of having, or that the Postal Service regarded her as having, such a substantially limiting disability. Varela claims that because the Postal Service recognized her medical restrictions and placed her in a limited duty position after her injury occurred in 1988,

---

[4]  Rather than presenting evidence to establish this element of her *prima facie* case, Varela appears to rely upon a purported stipulation made by the parties. *See Plaintiff's Response* (DN 34), p. 8. However, the Postal Service denies stipulating that Varela is a qualified individual with a disability within the meaning of the Rehabilitation Act and, in fact, argues to the contrary in its brief. *See Defendant's Reply* (DN 40), p. 7. A review of the record demonstrates that the parties did stipulate, during an administrative hearing, that "Varela has an impairment that substantially limits a major life activity during 1998, November of 1998, and she was qualified for her job in November of 1998." *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 20, EEOC Decision, July 12, 2002, p. 10. Varela's complaint regarding the issuance of the N-Tol letter (Count VI) was at issue during that administrative hearing. Such stipulation is very fact-specific and appears to isolate the issue for purposes of that count only, as it confines the stipulation to November of 1998. In fact, other EEO opinions held that Varela was not a qualified individual with a disability. *See id.*, Exhibit 5, EEOC Decision, March 11, 2002, p. 12.

the Postal Service must have regarded her as having a disability.  However, "an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885 (6ᵗʰ Cir. 1996). The Postal Service's willingness to provide positions conforming with her medical restrictions does not prove that it regarded her as being disabled, as that term is used in the Rehabilitation Act. Varela has not established that she is a qualified individual with a disability entitled to protection under the Rehabilitation Act. Thus, she has not demonstrated that she was a member of a protected class.

Even *assuming arguendo* that Varela is an otherwise qualified individual with a disability, she still did not establish her *prima facie* case because she failed to show that similarly situated individuals were treated more favorably for the same or similar conduct. She asserts that Bomer, a similarly situated non-disabled, non-Caucasian, was treated more favorably.  However, we find that Bomer was not similarly situated because she did not engage in the same type of improper conduct. The record supports that Bomer was baiting Varela by coughing loudly. However, Bomer's behavior differs from Varela's behavior.  Varela swung the mail tray close to Bomer's face, an act warranting more severe disciple than Bomer's baiting, according to the arbitrator's finding. *Defendant's Motion for Summary Judgment*, Exhibit 4, p. 4-5.

Furthermore, even if Varela did establish a *prima facie* case, the burden would simply shift to the Postal Service to articulate a legitimate reason for her suspension.  As noted above, the Postal Service has met this burden.  We agree with the arbitrator's conclusion that Varela engaged in improper conduct during her altercation with Mills.   The 7-day paper suspension resulted from her improper conduct, not her race or disability. Thus, the ultimate burden remains

with Varela.  Yet, she points to neither direct nor circumstantial evidence sufficient to suggest that her conduct was not the actual reason for her suspension or that her suspension was based upon her race or disability.[5]  We note that, while the arbitrator concluded that the " [initial] discipline was not handed out evenly" and did not comport with proper internal procedures, he did not find that it was the result of racial or disability discrimination.  *See Defendant's Motion for Summary Judgment,* Exhibit 4, p. 4. In fact, the arbitrator found that Varela's misconduct warranted some level of discipline. As Varela has not met her burden in combating the Postal Service's proffered reason, the court will grant the defendant's motion for summary judgment on Count One.

### Count II

Varela alleges that she is "constantly confronted with hostility in the workplace." *Plaintiff's Response* (DN 34), p. 10.  To succeed on such claim under Title VII, she must establish proof of a severe and pervasive hostile work environment. *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).  To establish a *prima facie* case, Varela must demonstrate that 1) she was a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based upon her status in the protected class; 4) the harassment effectively interfered with her work performance by creating an intimidating, hostile, or offensive work

---

[5] Varela makes the general statement that Tooma "many many times remarked regarding [her] disabilities." *Plaintiff's Response* (DN 34), p. 8.  She claims he made these statements when she was initially assigned to work for him.  *See id.*  The record is devoid of an evidence indicating that Tooma made any such statement regarding Varela's suspension, the adverse action being challenged in this count.  Varela has not established that she was suspended solely because of her disability.  On the contrary, the record contains ample evidence establishing that her 7-day paper suspension was appropriate in light of her improper conduct.

environment; and 5) the existence of employer liability. See *id.*

Varela has not satisfied this burden. She has merely stated that (1) she is a qualified individual with a disability; (2) she suffered taunting by Bomer; and (3) Tooma knew of such "verbal abuse." *See Plaintiff's Response* (DN 34), p. 10. She has not established that Bomer's taunting constituted the type of severe and pervasive harassment required of a cognizable hostile work environment claim. In fact, the United States Supreme Court has repeatedly held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The record is devoid of evidence that any purported harassment was based on her race or her disability or that such harassment interfered with her work performance.[6]  As Varela has not  established her *prima facie* case, the court will grant summary judgment for the defendant on Count Two.

### Count III

Varela claims that the Postal Service failed to reasonably accommodate her disability. Varela was assigned to light duty work because she suffers from carpal tunnel syndrome.  She requested reassignment to a permanent modified position which would be consistent with her medical restrictions.

An employer is required to make reasonable accommodations for disabled persons. *See* 29 C.F.R. §1630.9.  Varela alleges that the Postal Service "never offered a proper modified job

---

[6]
 The Postal Service contends that Varela failed to exhaust her administrative remedies on this particular claim. The plaintiff did not address the issue in her Response (DN 34). We find that, even if exhaustion had occurred, Varela failed to establish her *prima facie* case.  Therefore, it is unnecessary to address the exhaustion issue on Varela's hostile work environment claim.

to accommodate her for her disability." *Plaintiff's Response* (DN 34), p. 10. The Postal Service did, however, extend a modified job offer to Varela on April 2, 1997. *See Defendant's Motion for Summary Judgment* (DN 29)*, Exhibit 13, Job Offer Rehab.  She refused the offer and now claims that it was "not proper because it was very vague, not including an organizational location, a commencement date, did not name a supervisor nor did it set forth job duties which met Ms. Varela's work restrictions due to her disability." *See id.* at p. 11.

    This particular allegation does not fall properly within the ambit of the Rehabilitation Act because it was not offered as an "accommodation" within the meaning of the Act.  The modified position offered to Varela was made pursuant to the requirements of the Department of Labor, which has established guidelines for workers who have suffered on-the-job injuries.  Varela's carpal tunnel has been characterized as a work-related injury. *See Plaintiff's Response*, (DN 34), Hearing Transcript No. 240-A0-5177X, p. 25.  The Office of Workers Compensation Program ("OWCP") is required to provide "limited duty jobs" to employees with compensable job-related injuries.  *See* 20 C.F.R. §10.507. To the extent that Varela alleges the 1997 modified job offer did not comply with the OWCP regulations, those allegations would be properly adjudicated before the OWCP itself.  *See Plaintiff's Response*, (DN 34), Hearing Transcript No. 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X, p. 70-71.

    Even if the offer were accurately characterized as an "accommodation" and Varela was a "qualified individual with a disability," she has failed in initial burden of establishing that the accommodation was unreasonable.  An employer does not have to provide a specific accommodation desired by the employee if the employer provides a reasonable alternative. *See Hankins v. The Gap*, 84 F.3d 797, 800-01 (6th Cir. 1996). While the job offer may not have

10

complied with Varela's particular expectations, there is simply insufficient evidence in the record to conclude that the job offer would not reasonably accommodate her disability. Accordingly, the court will grant the defendant's motion for summary judgment on Count Three.

### **Counts IV and V**

Count Four of Varela's complaint originates from the denial of a position as window clerk, which she bid upon in 1998. Varela claims that the Postal Service discriminated against her on the basis of disability when she, the senior bidder, was denied the position on August 28, 1998. She brought a formal EEO complaint regarding this incident. The EEOC investigated and heard her complaint, ruling on March 11, 2002 that Varela had failed to establish a *prima facie* case of discrimination.

Due to her carpal tunnel and wrist injury, Varela was restricted from keying, lifting more than five pounds with her left hand, lifting more than twenty pounds with both hands, and climbing ladders which would require her to hold on with her hands. *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 14, Letter from Doctor Bloemer, Feb. 17, 1997. Management officials contend that the duties required of the window clerk position were not within Varela's medical restrictions. Specifically, the position required the employee to carry packages weighting up to seventy pounds and also required keying.

Varela, on the other hand, has stated that she believed the job duties were within her restrictions and that her lifting restriction did not pose a problem because the Postal Service had implemented a safety proclamation allowing any employee who could not lift a particular package to ask for assistance. *See Defendant's Motion for Summary Judgment* (DN 29)*, p.13. She also claims that keying was not an barrier because the type of keying required of the window

11

clerk was not "constant keying." *See id.* This argument is of no consequence because Varela's doctor did not qualify her restriction in any way; it was simply listed as "no keying." *See id.* (DN 29), Exhibit 14, Letter from Doctor Bloemer, Feb. 17, 1997. The Postal Service had a duty to comply with those restrictions. The keying and the lifting duties were, *in fact*, outside of the restrictions provided to the Postal Service by Varela's doctor. Therefore, the Postal Service did not discriminate against her when it denied her bid for the window clerk position.

In Count Five, Varela claims that the Postal Service failed in its duty to accommodate her to the window clerk position. As previously noted, Varela bears the initial burden of establishing that she was a "qualified individual with a disability" entitled to protection under the Rehabilitation Act. To satisfy this element, she must establish that she could perform the essential functions of the position in question. *See Southwestern Comm. College v. Davis*, 442 U.S. 397, 405-06 (1979). "[L]egitimate physical qualifications may be essential" to the performance of certain positions. *See id* at 407. In fact, the Postal Service notes that "Gina Mullins, Senior Personnel Specialist, stated that while Plaintiff's restrictions are accommodated in her [then] present position, the Distribution and Window Clerk position was different and that the essential functions of the position required the employee to carry packages weighting up to 70 [pounds] and further required keying on an IRT and cash register . . ." *See Defendant's Motion for Summary Judgment* (DN 29), p.13-14. There appears to be no dispute that the keying and lifting requirements are essential functions of the window clerk position.

Instead, Varela argues that the Postal Service had a duty to accommodate her in the position. The record contains no evidence, however, of any reasonable accommodation that was refused by the Postal Service. On the contrary, the evidence indicates that Varela's medical

12

restrictions clearly precluded her from being able to perform the essential functions of the position. Accordingly, the court will grant the defendant's motion for summary judgment on both Counts Four and Five.

### Count VI

Count Six of Varela's complaint concerns a No Time Off Letter ("N-Tol") that she received as a result of improper conduct in November of 1998. The N-Tol stemmed from an incident in which Varela was dodging a moving cart. As she hurried out of the way, she ran into a coworker, Georgetta Bishop, who then pushed Varela away. Varela immediately "screamed" at Bishop, warning her never to touch her again. The two women then began arguing loudly. Both employees were given a N-Tol, although they were subsequently rescinded. Varela now claims that the Postal Service discriminated against her based on her disability, her race and in reprisal for prior EEO activity when it issued the N-Tol to her.

The *McDonnell-Douglas* burden shifting framework previously discussed can be employed in disability and race discrimination claims, as well as in reprisal claims. *See e.g., Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990). However, where the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action at issue, the analysis can proceed directly to final step of the *McDonnell-Douglas* test. *See, e.g. U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 713-14 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant."). Therefore, we will proceed, *assuming arguendo,* that Varela established her *prima facie* case of disability and racial discrimination as well as reprisal.

13

The Postal Service has articulated a legitimate and nondiscriminatory reason for issuing the N-Tol; that is, she engaged in improper conduct during an altercation with a coworker. We agree with the EEOC's conclusion that the Postal Service offered "persuasive and credible" evidence to support this reason.  *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 20, EEOC Decision, July 12, 2002, pp.12-16. The administrative record contains evidence, including testimony from several witnesses deemed "credible" by the administrative law judge, indicating that Varela shouted at and physically threatened Bishop during this altercation. Varela, on the other hand, has failed to produce any evidence establishing that this purported reason was merely pretext for discrimination or retaliation. Varela points to neither direct nor circumstantial evidence suggesting that her conduct was not the actual reason she received the N-Tol letter or that the discipline was based upon her disability, her race or in retaliation for earlier EEO-protected activity.  Therefore, the court will grant the defendant's motion for summary judgment on Count Six.

### Count VII

Varela signed up for CPR training provided by the Postal Service.  There were not enough spots in the class for all interested employees; and, on February 22, 2000, Varela was denied admittance to the training. Sue Miracle, the Manager of Distribution Operations, determined which employees would receive the training. She did not select employees who had difficulty lifting, bending or kneeling because she felt, based upon her prior experience in such training, that those employees could not serve an injured person.  *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 22b. EEO Affidavit, Sue Miracle.  Miracle acknowledged that she did not select employees who were on light/limited duty or who had medical

14

restrictions.  *See id.*

Varela has already pursued this claim at the administrative level.  The EEOC granted summary judgment in favor of Varela, finding that the Postal Service discriminated against her based on her disability. *See id.* (DN 29), Exhibit 6, EEOC Decision, July 3, 2002.  The EEOC awarded Varela $100, attorney fees and ordered the Postal Service to provide or pay for a CPR training course for Varela.  *See id.* at 26-28.  Varela has presented no evidence, nor has she even argued, that the Postal Service did not comply with the EEOC order. To the extent that Varela is seeking greater compensation than that offered to her at the administrative level, this court cannot grant such relief.  *See, e.g., Legard v. England*, 240 F.Supp.2d 538, 545-56 (E.D.Va. 2002) (where defendant complied with the administrative law judge's order awarding damages, but plaintiff refused such relief, the federal district court lacked jurisdiction to hear plaintiff's claims).

Additionally, we agree with the EEOC determination that Varela failed to carry her burden in establishing that her denial from CPR training resulted from prior EEOC activity. *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 6, EEOC Decision, July 3, 2002, p. 2. Varela failed to establish the existence of factors giving rise to an inference of retaliation. Thus, *assuming arguendo* that she establish a *prima facie* case, the Postal Service adequately articulated legitimate, non-retaliatory reasons for its actions.  Specifically, the Postal Service did not admit Varela into CPR training because she had lifting restrictions and she had a history of not working well with other employees.  *See id.* at 3.  Therefore, the court will grant the defendant's motion for summary judgment on Count Seven.

### Counts VIII and IX

On May 20, 2002, Varela was issued a notice of removal and a subsequent letter of decision on July 17, 2002.  Varela alleges that the Postal Service discriminated against her based on her disability, gender and in retaliation for prior EEO activity when it improperly issued such notices.[7] The May 20, 2002 notice of removal indicated that Varela would be removed from the Postal Service effective June 29, 2002. *See Defendant's Motion for Summary Judgment* (DN 29), Exhibit 7, Notice of Removal Letter.  The reason listed for her removal was "being unavailable to perform the duties of [her] position."  Specifically, she had failed to report for duty since April 14, 2001 and had been in leave without pay ("LWOP") status in excess of one year.  The Postal Service relied upon "The Employee and Labor Relations Manual," § 514.4, which states: "An employee may be separated if required to be absent for more than 1 year unless there is cause to expect recovery and return within a reasonable time after the end of 1 year in LWOP status." The notice further indicated that Varela's absence "impact[ed] the efficiency of the overall operation" by disrupting schedules, lowering moral and negatively influencing the Postal Service in its ability to serve customers.

On June 12, 2002, the Postal Service issued a second letter to Varela informing her that her May 20, 2002 Notice of Removal should have been a *Proposed* Notice of Removal instead. *See id.* (DN 29), Exhibit 7, Addendum to Notice of Proposed Removal.  Due to an administrative

---

[7] Varela appears to claim that the Postal Service discriminated against her based on race when it issued the notice and decision of removal. *See Third Amended Complaint*, ¶ 33.  Plaintiff raised no such claim at the administrative level.  *See Defendant's Motion for Summary Judgment*, Exhibit 23, EEO Formal Complaint.  Thus, such claim is dismissed for failure to exhaust her administrative remedies.  *See Brown v. Genera Services Admin.*, 425 U.S. 820, 833 (1976).

16

error, the Postal Service had overlooked her status as a disabled veteran.  Her veteran preference should have entitled her to a Proposed Notice of Removal, including an opportunity to meet with the decision-maker.  This second notice, which acknowledged the initial error, provided Varela with an opportunity to meet with the decision-maker if she did so within ten days.

Although the decision-maker, Ron Roberts, indicated his willingness to speak with Varela, there is no evidence in the record that such meeting ever occurred. *See id.* (DN 29), Exhibit 8, Letter of Decision - Removal. Varela's attorney contacted Roberts via letter dated June 25, 2002, notifying the Postal Service that she believed her proposed letter was based upon discrimination and issued in retaliation for her prior EEO activity.  Roberts allowed three additional weeks for Varela to set up a meeting or provide additional information. He then issued a decision of removal on July 17, 2002.[8] *See id.* at 1. Roberts based his decision upon her inability to report for duty for over fifteen months, which he stated "impact[ed] the efficiency of the overall operation." *Id.* at 2.

One of the essential elements of Varela's *prima facie* case for both discrimination and reprisal requires her to establish that an adverse employment action was taken against her.  She has not satisfied this element because her proposed removal never materialized; instead Varela filed for and received disability retirement.  *See id.*, Exhibit 25, Letter of Approval of Disability Retirement Application, Nov., 21, 2002.  Even *assuming arguendo* that she did establish each element of her *prima facie* case, she did not present any evidence to overcome the legitimate, nondiscriminatory reason offered by the Postal Service.  As discussed above, the Postal Service

---

[8] It is this decision that Varela challenges in Count IX of her complaint.

provided a legitimate, nondiscriminatory reason (her lengthy absence from work) for issuing both the notice and decision of removal.  Varela has not demonstrated that this reason had no basis in fact, did not actually motivate the discharge or was insufficient to motivate the discharge.  *See Manzer v. Diamond Shamrock*, 29 F.3d 1079, 1084 (6th Cir. 1994) (explaining how a plaintiff may establish that the legitimate, non-discriminatory reasons were merely pretext for discrimination or retaliation).  Therefore, the court will grant the defendant's motion for summary judgment on Counts Eight and Nine.

A separate order will be entered herein this date in accordance with this opinion.

cc:     Counsel of Record